UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re                                              Case No. 06-11246-DHW
                                                   Chapter 13
SHELIA HODGE,

    Debtor.
_____

SHELIA HODGE,

    Plaintiff,

v.                                                 Adv. Proc. No. 06-01210-DHW

THE MONEY SHOP, LLC.,

    Defendant.

## MEMORANDUM OPINION

    Shelia Hodge, the debtor in the underlying chapter 13 case, filed this adversary proceeding on November 15, 2006, seeking damages for The Money Shop, LLC's ("Money Shop") alleged willful violation of the automatic stay imposed by 11 U.S.C. § 362. The summons and complaint were served on the Money Shop through its registered agent, Linda McClain.

    The Money Shop failed to file a responsive pleading or otherwise defend, and the plaintiff moved for a default judgment. On February 22, 2007, the Clerk of Court entered the default on the record pursuant to Fed. R. Civ. Proc. 55(b)(1), which is made applicable to this proceeding by Fed. R. Bankr. Proc. 7055.

    Because the plaintiff's claim is not for a sum certain, an evidentiary hearing was held on April 4, 2007, in Dothan, Alabama for the purpose of liquidating the plaintiff's claim for damages. Again, notice of the hearing was given to Money Shop through its registered agent. Present

at the hearing were the plaintiff and her counsel, David G. Poston of the Brock & Stout law firm. The Money Shop did not appear at the hearing through counsel or otherwise.

## Jurisdiction

The court's jurisdiction in this adversary proceeding is derived from 28 U.S.C. § 1334 and from a general order of the United States District Court for this district referring title 11 matters to the Bankruptcy Court. Further, because this is a core proceeding pursuant to 28 U.S.C. § 157, this court's jurisdiction is extended to the entry of a final order or judgment.

## Factual Findings

When the defendant is in default, as here, the plaintiff's well-pleaded factual allegations, except those relating to the amount of damages, are taken as true. *Cotton v. Mass. Mut. Life Ins.* Co., 402 F.3d 1267, 1278 (11th Cir. 2005); *Tyco Fire & Sec., LLC v. Alcocer, 2007* WL 542583, *2 (11th Cir. Feb. 22, 2007) (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

In addition to the factual allegations contained in the complaint, the plaintiff presented uncontroverted evidence at the April 4, 2007 damage hearing that the court will also take as true. From these sources of evidence, the following factual findings are made.

On November 3, 2006, Shelia Hodge filed a voluntary chapter 13 petition for relief in this court. In the schedules of debts, which accompanied Ms. Hodge's bankruptcy petition, the Money Shop was listed as an unsecured creditor. *See* Schedule F – Creditors Holding Unsecured Nonpriority Claims. The debt owed by Ms. Hodge to the Money Shop was a so-called "payday loan" made under Alabama's Deferred Presentment Services Act.

On the same date that the bankruptcy petition was filed, November 3, 2006, Ms. Hodge's attorney mailed correspondence to the Money Shop notifying it of the bankruptcy filing and of the automatic stay.

On November 7, 2006, after having received Ms. Hodge's attorney's correspondence and with knowledge of the bankruptcy case, Trudy Benny, an employee of the Money Shop, left a recorded telephone message on Ms. Hodge's home answering machine. There, Ms. Benny acknowledged receiving the letter from Ms. Hodge's bankruptcy lawyer, yet she demanded, in no uncertain terms, that Ms. Hodge repay the debt to the Money Shop. Ms. Benny, intimating that she had spoken with the local district attorney, threatened Ms. Hodge with arrest and criminal prosecution if her debt was not repaid.[1]

On hearing the recording and fearing that her imminent arrest would result in the loss of her children and her job, Ms. Hodge left the house and spent that night away from her home. All the next day while at work, Ms. Hodge was apprehensive fearing arrest.

## Conclusions of Law

"The filing of a bankruptcy petition pursuant to title 11 operates to automatically stay creditors from pursuing certain specified collection actions against the debtor . . . ." *Justice Cometh, Ltd. v. Lambert*, 426 F.3d 1342, 1343 (11th Cir. 2005). The statute provides:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an

---

[1] The full tape recording was played in open court at the April 4, 2007 hearing. Although there has be no official transcript made of the recording, Ms. Benny left the following message:

> Hi, this is Trudy Benny with the Money Shop. I have gotten your letter from Brock & Stout. I've also talked to the DA's office. With your check, it doesn't stop me from criminally prosecuting you and having you arrested. I want my money, so Brock & Stout's not going to clear you with a debt from me. Your debt is less than 6 months old. I can either fight it in court with Brock & Stout or I can have you arrested. Either way, you're gonna pay me. So, call me back at 678-8698 and find out what your payment plan's going to be and what we can work out for you. Thank you.

3

Case 06-01210   Doc 15   Filed 05/07/07   Entered 05/07/07 14:43:16   Desc Main
Document      Page 3 of 8

application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of — . . .

>(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

11 U.S.C. § 362(a)(6).

Those who willfully violate the stay are liable for the debtor's actual damages, including costs and attorney fees. Further, willful violators, in some circumstances, may be assessed punitive damages. 11 U.S.C. § 362(k)(1) provides as follows:

> Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

The Court of Appeals for this Circuit, while acknowledging that the term "willfulness" varies depending upon the context, has held that "willfulness generally connotes intentional action taken with at least callous indifference for the consequences." *Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc.*, 793 F.2d 1529, 1535 (11th Cir. 1986); *see Jove Engineering, Inc. v. I.R.S.*, 92 F.3d 1539, 1555 (11th Cir. 1996). Other Circuit Courts have found a "willful" violation of the automatic stay when the violator knew of the stay and intentionally committed the violative act, regardless of any specific intent to violate the stay. *See Price v. United States*, 42 F.3d 1068, 1071 (7th Cir. 1994) *cited with approval in Jove Engineering,* 92 F.3d at 1555; *Citizens Bank v. Strumpf (In re Strumpf)*, 37 F.3d 155, 159 (4th Cir. 1994), *rev'd on other grounds,* 516 U.S. 16, 116 S. Ct. 286, 133 L. Ed. 2d 258 (1995).

In the case *sub judice*, there can be no doubt that at the time Ms. Benny left the taped message on the debtor's answering machine, she was aware of the debtor's pending bankruptcy case and of the resulting

4

automatic stay. She admits as much by her reference to correspondence that she received from the debtor's lawyers, Brock & Stout, regarding Ms. Hodge's bankruptcy case. Neither is there doubt that Ms. Benny's telephone call and taped message constituted an act to collect a prepition debt. Statements to the effect of "I want my money" and "you're gonna pay me" are clearly acts to collect a claim. These statements are all the more acts to collect when coupled with the threat of arrest and criminal prosecution. Therefore, the court finds that the Money Shop, through its employee, committed an act in violation of the automatic stay and did so willfully.

Having found a willful violation of the stay, the court now turns to the issue of damages. The debtor seeks both actual and punitive damages. The debtor's only actual damage is her attorney's fee for which a separate motion (Doc. # 14) has been filed.[2] The court finds that the attorney's fee is reasonable and that the attorney's services were necessary to protect the debtor's interests. Therefore, the debtor is entitled to recover actual damages of $4,044.49 representing her attorney's fee.

Turning now to the issue of punitive damages, which pursuant to the statute, are allowed only in "appropriate circumstances." 11 U.S.C. § 362(k). The Bankruptcy Code, however, does not specify what constitutes appropriate circumstances for the imposition of punitive damages leaving it to the sound discretion of the bankruptcy court. *Smith v. Homes Today, Inc. (In re Smith)*, 296 B.R. 46, 56 (Bankr. M.D.

---

[2] The debtor testified that she suffered apprehension as a result of the creditor's contact. She spent one night away from home in order to avoid what she believed would be efforts to arrest her. The next day her apprehension lingered while at work.

Yet a debtor who suffers only fleeting emotional injury cannot recover for purely emotional injuries under § 362(k). *See Aiello v. Providian Financial Corp.*, 239 F.3d 876, 880-81 (7th Cir. 2001). Further, this court has previously held that damages for emotional injury must be proven, like other forms of damages, with reasonable certainty. *Baird v. United States (In re Baird)*, 319 B.R. 686, 690 (Bankr. M.D. Ala. 2004). Here, the proof is not sufficient to award actual damages for emotional distress.

5

Ala. 2003)(Sawyer, J.). A number of standards have been employed by the courts that have considered the issue.

Some courts look to the "maliciousness or bad faith" of the creditor as a guide. Others use the creditor's "arrogant defiance of federal law" as the standard. Others, yet, have used "egregious, vindictive, or intentional misconduct" of the creditor as the standard. Still others have employed a multi-factor approach consisting of 1) the nature of the creditor's conduct; 2) the creditor's ability to pay; 3) the creditor's motives; and 4) provocation by the debtor. *Green Tree Servicing, LLC. v. Taylor*, 2007 WL 1009768, *6 (S.D. W. Va. March 30, 2007) (noting the above standards used by courts to determine whether circumstances are appropriate for a punitive damage award).

Under any of these standards, however, it is clear that "punitive damages usually require more than mere willful violation of the automatic stay." *Heghmann v. Indorf (In re Heghmann)*, 316 B.R. 395, 405 (B.A.P. 1st Cir. 2004).

In this case, by any of these standards, punitive damages are appropriate. Ms. Benny's conduct was malicious in that her threat to have the debtor arrested and criminally prosecuted was wrongful and against right. As noted, the underlying transaction here was a so-called payday loan. *See* Deferred Presentment Services Act, *Ala. Code* § 5-18A-1 *et seq.* (1975). Under Alabama law, the maker of a check which is given pursuant to this statute and which is dishonored upon presentment because of insufficient funds cannot be criminally prosecuted under the State's worthless check statute. *See Ala. Code* § 5-18A-13(h) (1975). Hence, Ms. Benny's action was malicious in that the threatened arrest and prosecution was wrongful and against right.

Ms. Benny's conduct was also vindictive. The tone and content of the language used in the tape recorded message conveyed a sense of getting even with the debtor, through arrest and prosecution, for her failure to repay the debt. Further, the nature of the creditor's conduct, although verbal, was harsh and menacing and motivated to coerce the debtor into paying a debt outside of the bankruptcy proceeding. There is no evidence that the debtor provoked the creditor's act.

6

Finally, one court has suggested another factor to be considered in determining whether punitive damages are in order. In *In re Cullen*, 329 B.R. 52, 58 (Bankr. N.D. Iowa 2005), the court held that a creditor's status as a sophisticated player in the creditor industry is relevant to the issue of punitive damages. In the case *sub judice*, the Money Shop is in the business of making consumer loans and at least should be familiar with the automatic stay imposed by the Bankruptcy law.

For these reasons, the court concludes that punitive damages are appropriate in this circumstance. The question then turns to the appropriate measure of those damages.

The Supreme Court in *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574, 116 S. Ct. 1589, 1598, 134 L. Ed. 2d 809 (1996) considered three guideposts in determining whether a punitive damage award was unconstitutionally excessive. They include: 1) reprehensibility of the wrongdoing; 2) the disparity between the harm suffered by the plaintiff (compensatory damages) and the punitive damage award; and 3) the difference in the punitive damage awarded here and those imposed in comparable cases. *Id.* at 574-75. Further, courts should also consider whether the amount of punitive damages serves the interest of deterrence. *Id.* at 584.

The degree of reprehensibility of the defendant's conduct is perhaps the most important consideration in determining the appropriate amount of punitive damages. *Id.* at 584. Assessing the reprehensibility of the defendant's conduct involves consideration of a number of aggravating factors including whether:

> the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident. The existence of any one of these factors weighing in favor of a plaintiff may not be sufficient to sustain

a punitive damages award; and the absence of all of them renders any award suspect.

*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419, 123 S. Ct. 1513, 1521, 155 L. Ed. 2d 585 (2003)(citations omitted).

Applying these factors in the case *sub judice*, harm to the plaintiff as a result of Money Shop's conduct went beyond mere economic injury. Although damages for plaintiff's emotional distress are not recoverable here, as noted *supra*, she was subjected to a degree of apprehension concerning the welfare of her children and the loss of her job in the event of the threatened arrest. Secondly, the plaintiff, at the time of Money Shop's conduct, was unquestionably in a financially vulnerable position having just filed for bankruptcy relief. Further, the Money Shop's conduct involves intentional malice, trickery, or deceit through its threat of arrest and criminal prosecution when such action was unavailable under State law. However, there is no evidence that the Money Shop's conduct was anything but an isolated incident comprising only one telephone call. Upon consideration of these factors, the court finds that imposition of punitive damages in the amount of $1,000 is appropriate under these circumstances.

## Conclusion

For these reasons default judgment will enter in favor of the plaintiff and against the defendant in the amount of $1,000 punitive damages and $4,044.49 attorney's fees. Pursuant to Fed. R. Bankr. Proc. 9021, a separate order consonant with this memorandum opinion will enter accordingly.

Done this the 7th day of May, 2007.

/s/ Dwight H. Williams, Jr.
United States Bankruptcy Judge

c: David G. Poston, Plaintiff's Attorney
Linda McClain, Defendant's Registered Agent